UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| IN RE: <br><br> ALGOZINE MASONRY RESTORATION, INC., <br><br>    Appellant-Debtor, <br><br>    v. <br><br> LOCAL 52 CHICAGO AREA JOINT WELFARE COMMITTEE FOR THE POINTING, CLEANING AND CAULKING INDUSTRY; TUCKPOINTERS LOCAL 52 DEFINED CONTRIBUTION ANNUITY TRUST FUND; and TUCKPOINTERS LOCAL 52 PENSION PLAN, <br><br>    Appellees-Creditors. | CAUSE NO.: 2:19-CV-145-TLS <br><br> Bankruptcy Case No: 16-23208 <br> Chapter 11 |

**OPINION AND ORDER**

This case is an appeal by Appellant-Debtor Algozine Masonry Restoration, Inc. (Algozine) contesting the United States Bankruptcy Court's March 29, 2019 order overruling Algozine's objection to the priority limits under 11 U.S.C. § 507(a)(5) applied to the claims for employee benefit contributions due on behalf of Algozine's employees filed by Appellees-Creditors Chicago Area Committee for the Pointing, Cleaning and Caulking Industry, Local 52 ("Welfare Fund"),[1] Tuckpointers Local 52 Defined Contribution Annuity Trust Fund ("Annuity

---

[1] The Appellees-Creditors represent that the current caption incorrectly identifies the Welfare Fund as "Local 52 Chicago Area Joint Welfare Committee for the Pointing, Cleaning and Caulking Industry" and that the correct name of the Welfare Fund is "Chicago Area Joint Committee for the Pointing, Cleaning and Caulking Industry, Local 52." Appellees' Resp. Br. 1, n.1, ECF No. 6.

Fund"), and Tuckpointers Local 52 Pension Plan ("Pension Fund") (collectively referred to as the "Funds"). This matter is also before the Court on a Motion to Strike Portion of Debtor-Appellant's Reply Brief [ECF No. 11],[2] filed by the Funds. For the reasons set forth below, the Court grants the motion to strike and affirms the Bankruptcy Court's order.

## BACKGROUND

On November 10, 2016, Algozine filed a Chapter 11 Bankruptcy Petition. *See* Bankr. Docket Entry 1, ECF No. 3 p.1. The Funds are multi-employer "employee benefit funds" as defined in 29 U.S.C. § 1002(2), (3), and (37), and administered in accordance with the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. *See* Bankr. Docket Entry 113 ¶ 1, ECF No. 3 p. 99. The Welfare Fund, the Pension Fund, and the Annuity Fund are separate and distinct entities from one another and provide separate types of benefits to the Funds' participants and beneficiaries according to the terms of the Funds' plans. *Id.* ¶ 2.

On March 8, 2017, the Funds filed separate proofs of claim under § 507(a)(5) of the Bankruptcy Code for the amounts due on behalf of Algozine's employees to each of the Funds, with the Welfare Fund, the Pension Fund, and the Annuity Fund assigned claim numbers 19-1, 20-1, and 21-1 respectively. *See* Bankr. Claim Nos. 19-1, 20-1, and 21-1, ECF No. 3-1 pp. 25–33 and ECF Nos. 3-3 (20-1), 3-4 (19-1), 3-5 (21-1). The claims sought priority treatment in the amounts of $65,658.83 (Welfare Fund), $56,057.90 (Pension Fund), and $34,621.36 (Annuity Fund), for a total of $156,338.09. *Id.*

On May 24, 2017, Algozine filed an objection to the Funds' claims. *See* Objection, Bankr. Docket Entry 87, ECF No. 3 p. 9 and ECF No. 3-1 pp. 3–7. Algozine primarily disputed

---

[2] In this Opinion, "ECF No." references are to the docket entries in this cause of action 2:19-CV-145-TLS. Docket entries in the Bankruptcy proceeding are referred to as "Bankr. Docket Entry."

that the total in priority claims of $156,338.09 should be reduced to $5,556.34 on the basis that (1) the amount due for the 180-period was only $141,925.42, (2) Algozine had already made payments in the amount of $70,000 during the 180-day period, and (3) $66,369.08 had been seized by third parties from Algozine, leaving a priority balance of $5,556.34. *Id*. ¶¶ 7, 8–9. Algozine also appeared to request that the amounts due for each individual Fund be combined for purposes of the priority limit set forth in § 507(a)(5) of the Bankruptcy Code. *Id.* ¶ 8, ¶ 8 n.1 ("Although the Claimant filed three proof[s] of claim the Debtor pays Local 52 as [a] single entity for the contribution and records the payment as such. Local 52 in turn distributes the payments among the various entities governed by the collective bargaining agreement.").

On June 23, 2017, the Funds filed a response to Algozine's Objection. *See* Resp. to Objection, Bankr. Docket Entry 113, ECF No. 3, pp. 99–103. As for the payments already received from Algozine and third parties, the Funds responded that the *non*-priority portions of their claims had applied those payments to the oldest delinquencies first outside of the 180-day period. *Id.* ¶ 4. However, in an effort to resolve Algozine's objection, the Funds amended their individual proofs of claims to adjust their priority claim amounts to take into account the amounts received from Algozine and third parties within the 180-day priority period. *Id.* ¶ 5. The Funds included a chart showing the adjusted balances owed to each Fund with amended priority amounts of $21,334.30 (Welfare Fund), $18,453.40 (Pension Fund), and $11,607.16 (Annuity Fund) for a total of $51,394.86. *Id*. The Funds also asserted that they are distinct entities and argued that § 507(a)(5) of the Bankruptcy Code does not support Algozine's position that the amounts due to each Fund should be combined in relation to the limit set forth in § 507(a)(5). *Id.* ¶ 3.

On July 13, 2017, the Bankruptcy Court held a prehearing and set a deadline of August 11, 2017, for supplemental briefs on the Objection. *See* Notice of Docket Entry, Bankr. Docket Entry 126, ECF No. 6 p. 408 (Resp. Br., Ex. 7). The parties each filed a supplemental brief on that date. *See* Funds' Suppl. Br., Bankr. Docket Entry 156, ECF No. 3 p. 121; Algozine's Suppl. Br., Bankr. Docket Entry 157, ECF No. 3 p. 131.

In its supplemental brief, Algozine argued that the priority limit for benefit payments to funds in § 507(a)(5) is limited by the per employee priority limit for wages in § 507(a)(4). *See* Algozine's Suppl. Br. 2–7, ¶ 3, Bankr. Docket Entry 157, ECF No. 3 pp. 132–37 ("Under § 507(a)(5) the claim can only have paid up to the balance of the 507(a)(4) ceiling."). Algozine reasoned that the Funds' interpretation that each plan could recover separately for benefit payments under § 507(a)(5) and that the priority limit under § 507(a)(5) is not subject to the per employee limit for wages in § 507(a)(4) would lead to an absurd result because funds could recover greater amounts than individual employees despite claims under § 507(a)(5) being a lower priority than claims under § 507(a)(4). *Id.* 2.

In their supplemental brief, the Funds reaffirmed their position that the limit for benefit payments to a fund in § 507(a)(5) is calculated on an aggregate basis based on a plain reading of the statute. *See* Funds' Suppl. Br. 1–4, Bankr. Docket Entry 156, ECF No. 3 pp. 121–24. The Funds reaffirmed the revised priority claim amounts of $21,334.30 (Welfare Fund), $18,453.40 (Pension Fund), and $11,607.16 (Annuity Fund) for a combined total of $51,394.86 in priority claims for the three Funds. *Id.* ¶ 6. The Funds also set out the calculation of the priority limit under § 507(a)(5) for each of the three Funds' claims as follows:

  Welfare Fund Cap:  $162,689.44 (priority claim of $21,334.30)

    $192,750.00 (15 employees x $12,850), *see* § 507(a)(5)(B)(i)

  – $30,060.56 (Pension $18,453.40 + Annuity $11,607.16), *see* § 507(a)(5)(B)(ii)[3]

  = $162,689.44

  Pension Fund Cap:  $159,808.54 (priority claim of $18,453.40)

    $192,750.00 (15 employees x $12,850), *see* § 507(a)(5)(B)(i)

  – $32,941.46 (Welfare $21,334.30 + Annuity $11,607.16), *see* § 507(a)(5)(B)(ii)

  = $159,808.54

  Annuity Fund Cap:  $127,262.30 (priority claim of $11,607.16)

    $167,050.00 (13 employees x $12,850), *see* § 507(a)(5)(B)(i)

  – $39,787.70 (Welfare $21,334.30 + Pension $18,453.40), *see* § 507(a)(5)(B)(ii)

  = $127,262.30[4]

*Id.* at ¶ 6, ¶ 6 n. 2–4. The Funds noted that each of the claims is within the cap set forth in § 507(a)(5). *Id.* ¶ 7.

  On September 5, 2018, the Bankruptcy Court issued an "Order Regarding Claim Objections." Bankr. Docket Entry 294, ECF No. 3 pp. 140–42. Therein, the Bankruptcy Court described the parties' dispute: "[Algozine] contends that the priority portion of the claims, filed by [the Funds], is subject to a single aggregate limit, i.e. $12,850 multiplied by the number of employees. While [the Funds assert] that *each* claim itself is subject to that limit." *Id.* 1–2. The Court also set out the calculation for the limit on a claim under § 507(a)(5): "[A] claim is entitled

---

[3] In their brief on appeal, the Funds represent that no employee made a priority wage claim under Section 507(a)(4). Funds' Resp. Br. 15, ECF No. 6. Therefore, the offset calculated under Section 507(a)(5)(B)(ii) for each of the claims subtracts only the payments made to other funds. *See* 11 U.S.C. § 507(a)(5)(B)(ii).

[4] In their Supplemental Brief, the Funds indicated that the Annuity Fund's cap is $127,362.30. *See* Funds' Suppl. Br. 3, Bankr. Docket Entry 156, ECF No. 3 pp. 123.

to priority status only to the extent of, 'the number of employees covered by each such plan multiplied by $12,850' *less* 'the aggregate amount paid to such employees under [§ 507(a)(4)] of this subsection, plus the aggregate amount paid to the estate on behalf of such employees to any other employee benefit plan.'" *Id*. 2 (quoting 11 U.S.C. § 507(a)(5)). The Bankruptcy Court found that, although it was prepared to rule on the legal issue applying the limit in § 507(a)(5), a hearing was necessary to clarify the credit for amounts paid by Algozine and third parties and the Funds' corresponding revised priority claim amounts. *Id.* 3. The Bankruptcy Court then stated: "Further, a ruling on the interplay between § 507(a)(4) and (a)(5) seems irrelevant at this point as it appears that the priority amount [the Funds are] claiming is below the cap (especially if [they] amend their] claim[s])." *Id.*

At a hearing on September 13, 2018, the parties stipulated that, if the Bankruptcy Court adopted Algozine's application of § 507(a)(5), the Funds' claims would be afforded priority treatment in the total amount of $5,556.34, and that, if the Bankruptcy Court adopted the Funds' application of § 507(a)(5), the Funds' claims would be entitled to priority treatment in the total amount of $51,216.86. *See* Notice of Docket Entry, Bankr. Docket Entry 299, ECF No. 3 p. 144; Mem. Decision 3, Bankr. Docket Entry 325, ECF No. 3 p. 148.

On March 29, 2019, the Bankruptcy Court issued a Memorandum and Decision overruling Algozine's objection to the Funds' claims. *See* Mem. Decision, Bankr. Docket Entry 325, ECF No. 3 pp. 146–51. The Bankruptcy Court characterized the dispute in its final form as "whether each of the three claims (19, 20, and 21) is subject to the priority cap imposed by § 507(a)(5) of the Bankruptcy Code, or whether the claims are collectively subject to a single cap." *Id.* 1. After setting out the statutory language of § 507(a)(4) and § 507(a)(5), including the limit calculation in § 507(a)(5)(B), the Bankruptcy Court held that "[t]he plain and unambiguous

6

language of the foregoing statute clearly contemplates that, in a single bankruptcy case, more than one 'employee benefit plan' may file a claim, i.e., 'claims for contributions', and that the priority limit set forth therein applies to 'each such plan'; which, could only refer to – *each* claim that is filed in the case by, or on behalf of, an employee benefit plan." *Id.* 4–5 (quoting 11 U.S.C. § 507(a)(5); citing *In re New England Cartage Corp.*, 220 B.R. 503 (Bankr. D. Mass. 1998)).

The Bankruptcy Court rejected Algozine's contention that this application of the statute leads to the absurd result that a benefit plan could "recover far more than employees by creating additional funds" even though Congress granted employee benefit funds lower priority. *Id.* 5 (quoting Algozine's Suppl. Br. 2, Bankr. Docket Entry 157). The Bankruptcy Court explained that "[t]he three separate employee benefit plans in this case are unquestionably components of the employees' total compensation package" and that "[t]he provisions of § 507(a)(5) intend to capture the portions of the employees' compensation for services that are not covered by § 507(a)(4)." *Id.* (citing *Howard Delivery Serv. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 659 (2006)). The Bankruptcy Court found "that allowing priority treatment for the three claims, in the manner advanced by [the Funds], is permitted under the plain meaning of § 507(a)(5), is consistent with the goal of the statute, and does not lead to an absurd result." *Id*. 6. The Bankruptcy Court overruled Algozine's objection and held that the three claims are entitled to priority treatment in the stipulated amount of $51,216.86. *Id.*

On April 15, 2019, Algozine filed a Notice of Appeal [ECF No. 1] in this Court. Algozine filed its Opening Brief [ECF No. 5], the Funds filed a Response Brief [ECF No. 6], and Algozine filed a Reply Brief [ECF No. 10]. On September 4, 2019, the Funds filed a Motion to Strike Portion of Debtor-Appellant's Reply Brief [ECF No. 11]; Algozine did not file a response, and the time to do so has passed.

7

## MOTION TO STRIKE

The Funds ask the Court to strike Section 2(I)(A) of Algozine's reply brief because it raises an issue not raised before the Bankruptcy Court and because it contains a misstatement of fact. The Funds contend that Algozine asserts for the first time in its reply brief that the amounts of the priority claim for each of the Funds includes employee benefit contributions for services not rendered within the 180 days prior to Algozine's bankruptcy petition. Because Algozine did not raise this issue before the Bankruptcy Court, the argument is waived. *See In re Sokolik*, 635 F.3d 261, 268 (7th Cir. 2011). The Funds also contend that Algozine's factual assertion that the Funds are seeking employee benefit contributions in excess of the hours worked by some employees is a misstatement of the record. The Funds confirm that the amount of employee benefit contributions sought by the Funds is based solely on the hours reported by Algozine. Algozine did not respond to the motion to strike. Finding the motion well taken, the Court grants the motion and strikes Section 2(I)(A) of Algozine's reply brief.

## STANDARD OF REVIEW

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1), which gives district courts jurisdiction to hear appeals from final judgements, orders, and decrees of bankruptcy courts. The Court reviews the bankruptcy court's determinations of law de novo and its findings of fact for clear error. *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009). This appeal concerns a matter of statutory construction, and the Court reviews the Bankruptcy Court's decision de novo.

## ANALYSIS

In this appeal, Algozine argues that the Bankruptcy Court committed reversible error in overruling Algozine's objection to the Funds' claims 19-1, 20-1, and 21-1. The legal issue before

this Court is whether the priority limit set forth in § 507(a)(5) of the Bankruptcy Code applies to each of the Funds' claims separately as argued by the Funds or requires a single limit as argued by Algozine.

When interpreting a statute, a court looks first to the language of the statute. *United States v. Balint*, 201 F.3d 928, 932 (7th Cir. 2000). "The first rule of statutory construction is to give words their plain meaning." *United States v. Jones*, 372 F.3d 910, 912 (7th Cir. 2004). "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004). Absent specific statutory definitions, words in a statute are presumed to have their ordinary or natural meaning. *Smith v. United States*, 508 U.S. 223, 228 (1993).

**A.      Section 507(a)(5) of the Bankruptcy Code**

Section 507 of the Bankruptcy Code entitles certain types of unsecured claims priority status in payment over other unsecured claims. *See* 11 U.S.C. § 507. The provisions relevant to the instant appeal are § 507(a)(4) and § 507(a)(5), which grant priority status to creditors' claims for unpaid "wages, salaries, or commissions" and for unpaid contributions to "an employee benefit plan," respectively:

> (a) The following expenses and claims have priority in the following order:
> . . .
> **(4)** Fourth, allowed unsecured claims, *but only to the extent of [$12,850] . . . for each individual* or corporation, as the case may be, earned within 180 days before the date of the filing of the petition . . . for—
>> **(A)** wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual;
>
> . . .
> **(5)** Fifth, allowed unsecured claims for contributions to an *employee benefit plan*–
>> **(A)** arising from services rendered within 180 days before the date of the filing of the petition . . . *but only*

9

> **(B)** for *each* such plan, *to the extent of*—
> **(i)** the number of employees covered by each such plan multiplied by [$12,850]; *less*
> **(ii)** the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(4), (a)(5) (emphasis added) (footnote omitted);[5] *see Howard Delivery Serv., Inc.*, 547 U.S. at 654.

On March 8, 2017, the Welfare Fund, Pension Fund, and Annuity Fund filed separate proofs of claim, docketed in the Bankruptcy proceeding as claims 19-1, 20-1, and 21-1. Each Fund sought priority treatment under § 507(a)(5) for a portion of its unsecured claim based on contributions due on behalf of Algozine's employees to the separate Funds for work performed on behalf of Algozine within 180 days of Algozine's bankruptcy petition.

**B.      Plain Meaning of the Statute**

Looking to the priority limits, § 507(a)(4) allows a priority claim to the extent of $12,850 per employee for pre-petition claims for wages, salaries, and commissions earned in the 180 days prior to the petition. 11 U.S.C. § 507(a)(4). Section 507(a)(5) next provides priority for contributions to an employee benefit plan when the payments arise from services rendered within 180 days prior to the petition date. *Id.* § 507(a)(5). Unlike § 507(a)(4), the text of § 507(a)(5) does not contain a "per employee" limit on priority claims for those contributions. *See id.* § 507(a)(5). Instead, § 507(a)(5) allows for a priority claim "to the extent of" the formula set out in § 507(a)(5)(B). *Id.* That formula limits the total amount of all payments for "each such [employee benefit] plan" to (i) the number of debtor's employees covered by "each such [employee benefit] plan" multiplied by $12,850, *id.* § 507(a)(5)(B)(i), from which is subtracted

---

[5] Every three years, the amount in § 507(a)(4) and § 507(a)(5) is increased. *See* 11 U.S.C. § 507 Adjustment of Dollar Amounts note; *see also* 11 U.S.C. § 104.

(ii) both "the aggregate amount" paid to those employees under § 507(a)(4) *and* "the aggregate amount" paid by the estate on behalf of those employees to any other employee benefit plan, *id.* § 507(a)(5)(B)(ii).

The plain language of the statute applies the priority limit set forth in § 507(a)(5) to "each such plan" that files a claim, *see* 11 U.S.C. § 507(a)(5)(B), meaning that more than one employee benefit plan may file a claim and that the priority limit is calculated as to each plan's claim. As demonstrated in this case, each employee benefit plan may have a different number of employees covered by the plan such that the first calculation under § 507(a)(5)(B)(i), which multiplies $12,850 by the "number of employees covered by each such plan," could be different for each plan. Here, the Annuity Fund has 13 employee participants, resulting in a § 507(a)(5)(B)(i) calculation of $167,050 (13 x $12,850), whereas the Welfare Fund and the Pension Fund each have 15 employee participants, resulting in a calculation of $192,750 (15 x $12,850) for each.

The plain language of the statute also establishes that the priority limit for employee benefit contributions to each such plan under § 507(a)(5) is tied to an aggregate amount based on the total number of the debtor's employees covered by the employee benefit plan and is not tied to the individual employee limit under § 507(a)(4). Section 507(a)(5)(B)(i) provides that "the number of *employees* covered by *each such plan* [be] multiplied by [$12,850]." In *In re Consolidated Freightways Corp. of Delaware*, the Ninth Circuit Court of Appeals addressed the same issue of whether the limit set forth in § 507(a)(5) is an aggregate limit or an individual employee limit. 564 F.3d 1161, 1168 (9th Cir. 2009). In that case, the trustee argued that § 507(a)(4) and § 507(a)(5) imposed a total limit of $4,650 (now $12,850) for each individual

11

employee. *Id.* Affirming the bankruptcy court, the Ninth Circuit held that the limit in § 507(a)(5) is calculated on an aggregate basis and is not a per employee limit:

> A plain reading of § 507(a)(5) demonstrates that it provides an aggregate limit on recovery under that provision; not an individualized recovery per employee. Had Congress intended it to be individualized, it had the § 507(a)(4) pattern close at hand; there, the limit is 'for each individual[.]' However, in writing § 507(a)(5), Congress stated the total amount available for priority claims and then set out the aggregate amount for covered 'employees' rather than an amount for each employee. The use of quite different language in that portion of the two provisions bespeaks a different intent.

*Id.* The fact that the priority limit is calculated on an aggregate basis allows for the possibility than an employee benefit contribution on behalf of a given employee under § 507(a)(5) may be in excess of $12,850 as long as the aggregate limit applied to the employee benefit plan under § 507(a)(5)(B) is not exceeded. *See id.*; *see also* 4 Collier on Bankr. 507.07[3][b] (Alan N. Resnick and Henry J. Sommer, eds. 16th Ed.) ("In calculating the maximum amount of priority, the calculation is to be done on the basis of the full number of employees covered by the plan, regardless of the particular amount of benefits allocatable to any individual.").

Thus, to the extent that Algozine is advocating for a cap on employee benefit plan contributions under § 507(a)(5) based on a per employee limit linked to the recovery of wages under § 507(a)(4), that interpretation is not supported by the plain language of the statute. Along with *In re Consolidated Freightways Corp.*, several courts have explicitly rejected such an additional limitation. *See In re Edgar B, Inc.*, 200 B.R. 119, 123–24 (M.D.N.C. 1996) (reversing the bankruptcy court and holding that § 507(a)(5) "is tied to aggregating amounts and is not tied to the individual employees based upon the amounts paid to them" and that "[o]nce an aggregate amount is determined, it is limited only by the reductions set out in [§ 507(a)(5)(B)(ii)]");[6] *In re*

---

[6] With the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 212, 119 Stat. 51, the numbering of the subsections relevant to this case were changed from (a)(3) (wages) and

*New England Cartage Corp.*, 220 B.R. at 504 (holding that the limit in § 507(a)(5) "is an aggregate limitation and does not limit the amount allowable on account of a specific employee"); *In re P.C. White Truckline, Inc.*, 22 B.R. 540, 541 (Bankr. M.D. Ala. 1982) ("[Section 507(a)(5)] is not tied to the individual employees in the amounts paid to them. It is a grossing out limitation.").

In its appellate brief, Algozine cites three cases to argue that claims for contributions to an employee benefit plan under § 507(a)(5) should be limited by the per employee cap of $12,850 for wage claims under § 507(a)(4). *See* Opening Br. 6–10, ECF No. 5 (citing *Howard Delivery Serv., Inc.*, 547 U.S. 651; *In re Tropicana Entm't, LLC*, Case No. 08-10856, 2015 WL 6112064 (Bankr. D. Del. Oct. 14, 2015); *In re Powermate Holding Corp.*, 394 B.R. 765 (Bankr. D. Del. 2008)). However, the issue decided in each cited case was whether certain types of claims were entitled to priority status under § 507(a), and none of the cases decided the issue of how to calculate the priority limit under § 507(a)(5).

Algozine relies primarily on *Howard Delivery Service, Inc.*, where the issue before the Supreme Court was whether premiums owed by the debtor to a workers' compensation carrier should be afforded priority claim status under § 507(a)(5) as "contributions to an employee benefit plan." 547 U.S. at 655. Finding that "workers' compensation regimes substitute not for wage payments, but for tort liability," the Supreme Court held that premiums owed to a workers' compensation carrier were not included within the "priority allowed by § 507(a)(5)." *Id.* at 668.

To reach its holding, the Supreme Court considered the close relationship between § 507(a)(4) to § 507(a)(5), explaining that Congress added § 507(a)(5) to provide a priority for fringe benefits in the wake of two earlier Supreme Court decisions holding that fringe benefits

---

(a)(4) (employee benefit plans) to the current numbering of (a)(4) (wages) and (a)(5) (employee benefit plans). *See Howard Delivery Serv.*, 547 U.S. at 654 n. 1.

13

were not "wages" within the meaning of § 507(a)(4). *Id.* at 658. "Beyond genuine debate, the main office of § 507(a)(5) is to capture portions of employee compensation for services rendered not covered by § 507(a)(4)." *Id.* at 659. The Supreme Court further explained that "[t]he current Code's juxtaposition of the wages and employee benefit plan priorities manifests Congress' comprehension that fringe benefits generally complement, or 'substitute' for, hourly pay." *Id.* (citing H.R. Rep. No. 95-595, p. 357 (1977) (recognizing "the realities of labor contract negotiations, under which wage demands are often reduced if adequate fringe benefits are substituted")).

The next passage in *Howard Delivery Service* is cited by Algozine in support of limiting § 507(a)(5) based on the per employee limit in § 507(a)(4):

> Congress tightened the linkage of subsections (a)(4) and (a)(5) by imposing a combined cap on the two priorities, currently set at [$12,850] per employee. *See* § 507(a)(5)(B). Because (a)(4) has a higher priority status, all claims for wages are paid first, up to the [$12,850] limit; claims under (a)(5) for contributions to employee benefit plans can be recovered next up to the remainder of the [$12,850] ceiling. No other subsections of § 507 are joined together by a common cap in this way.

547 U.S. at 659–60. But, this passage is offered as one of the "textual ties binding § 507(a)(4) and (5)" in the context of the Supreme Court deciding whether workers' compensation premiums are eligible for priority claim status under § 507(a)(5). *Id.* at 660. The Supreme Court was not deciding or applying the mechanics of calculating the priority limit set forth in § 507(a)(5)(B) as the issue was not before the Court. Moreover, § 507(a)(5)(B) does provide a "ceiling" on priority claims for contributions to employee benefit plans based on multiplying the number of employees by $12,850 minus the amount paid to those same employees pursuant to the § 507(a)(4) priority. *See In re Consol. Freightways*, 564 F.3d at 1167 (citing 11 U.S.C. § 507(a)(5)(B)).

14

C.     **No Absurd Result**

Algozine contends that applying a per plan limit rather than a per employee limit leads to the absurd result that employee benefit plans could recover more than the employees, altering the priority scheme between § 507(a)(4) and § 507(a)(5). Opening Br. 9–10, ECF No. 5. This argument is not well taken given that each employee benefit plan filing a claim under § 507(a)(5) is seeking unpaid employee benefits that are part of the employees' total compensation package made up of wages and benefits. *See Howard Delivery Serv.*, 547 U.S. at 659. Algozine's reasoning also ignores the deductions in § 507(a)(5)(B)(ii) that specifically account for both priority wage payments made to employees under § 507(a)(4) as well as all benefit payments made to other plans. In their supplemental bankruptcy brief, the Funds' calculation of the cap for each Fund's claim explicitly subtracts the amounts paid to the other two Funds. *See* Funds' Suppl. Br. ¶ 6, Bankr. Docket Entry 156, ECF No. 3 p. 123. Finally, Algozine's calculations in its brief applying the reduction under § 507(a)(5)(B)(ii) for payments to other plans are faulty because Algozine fails to first make the calculation under § 507(a)(5)(B)(i) that requires that the total number of employees covered by a fund be multiplied by $12,850. *See* Opening Br. 10–11, ECF No. 5.

D.     **Calculation of the Limit Under § 507(a)(5)(B)**

As a final matter, Algozine argues that the Funds were required to demonstrate that their priority claims did not exceed the limits set forth in § 507(a)(5)(B). Opening Br. 10, ECF No. 5. However, the calculation of the Funds' priority claims and whether the claims exceed the limitations set forth in § 507(a)(5)(B) are not issues on appeal in this case. In the Bankruptcy Proceeding, the parties stipulated to the amount of the Funds' priority claims. *See* Mem. Decision 3, Bankr. Docket Entry 325, ECF No. 3 p. 148. That stipulation was based, in part, on

the calculations in the Funds' supplemental brief, which calculated the priority cap for each of the three Funds' claims based on the limitations set forth in § 507(a)(5)(B), including reductions for the payments on the other two Funds' claims as required under § 507(a)(5)(B)(ii). *See* Funds' Suppl. Br. ¶ 6, Bankr. Docket Entry 156, ECF No. 3 p. 123. By stipulating to the amount of the Funds' priority claims, Algozine waived its right to argue the calculation of the deductions under § 507(a)(5)(B)(ii). *See In re Sokolik*, 635 F.3d at 268; *In re Winer*, 162 B.R. 781, 784 (N.D. Ill. 1993) (citing *Matter of Kroner*, 953 F.2d 317, 319 (7th Cir. 1992)).

Algozine also misrepresents the Bankruptcy Court's ruling by stating that the Bankruptcy Court held that "507(a)(5) applied [ ] per plan without deducting the amounts required in (a)(5)(B)(ii)," "ignor[ed] subjection (B)(ii)," "applied only the first part of 507(a)(5)(B)(i) but failed to apply 507(a)(5)(B)(ii) deductions." Opening Br. 9, 11, ECF No. 5. The Bankruptcy Court made no such ruling. As noted above, the Funds' supplemental brief in the Bankruptcy proceedings calculated the cap for each Fund's claim by applying § 507(a)(5)(B)(ii). *See* Funds' Suppl. Br. ¶ 6, Bankr. Docket Entry 156, ECF No. 3 p. 123. Subsequently, in its September 5, 2018 Order, the Bankruptcy Court commented that "it appears that the priority amount [the Funds are] claiming is below the cap . . . ." Bankr. Docket Entry 294, ECF No. 3 p. 142. In its March 29, 2019 Memorandum Decision, the Bankruptcy Court quoted § 507(a)(5)(B)(ii) as part of the formula for calculating the per plan priority claim limit, emphasizing the words "*other employee benefit plan*" therein. *See* Mem. Decision 4, Bankr. Docket Entry 325, ECF No. 3 p. 149. And again, it was not necessary for the Bankruptcy Court to make the calculations under § 507(a)(5)(B) because the parties stipulated to the amount of the Funds' priority claims.

**E.     Ruling**

Accordingly, the priority limit set forth in § 507(a)(5) is tied to an aggregate amount based on the total number of Algozine's employees participating in the employee benefit plan less the amounts set forth in § 507(a)(5)(B)(ii). In addition, the priority limit applies separately to each of the claims filed by the Welfare Fund, the Pension Fund, and the Annuity Fund, with the reduction under § 507(a)(5)(B)(ii) accounting for the payments made to the other funds. In the Bankruptcy proceeding, the parties stipulated to the amounts due to the Funds on each of the three priority claims, which was based on a limit that included the reductions under § 507(a)(5)(B)(ii). The Court finds that allowing priority treatment for the three claims in the manner advanced by the Funds is supported by the plain meaning of § 507(a)(5) and does not lead to an absurd result. The Court affirms the Bankruptcy Court's decision.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Motion to Strike Portion of Debtor-Appellant's Reply Brief [ECF No. 11] and AFFIRMS the decision of the Bankruptcy Court overruling Algozine's objection to the Funds' claims.

So ORDERED on November 9, 2020.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT